*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-242

GERALD G. NEILL, JR., APPELLANT,

v.

DISTRICT OF COLUMBIA
PUBLIC EMPLOYEE RELATIONS BOARD, APPELLEE,

and

FRATERNAL ORDER OF POLICE,
METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, INTERVENOR.

Appeal from the Superior Court of the
District of Columbia
(MPA-CAP2009-12)

(Hon. Judith N. Macaluso, Trial Judge)

(Argued January 23, 2014                    Decided June 19, 2014)

*Matthew August LeFande* for appellant.

*Geoffrey H. Simpson*, with whom *Bruce A. Fredrickson* and *Cedar P. Carlton* were on the brief, for appellee.

*Marc L. Wilhite* for intervenor.

Before GLICKMAN and MCLEESE, *Associate Judges*, and RUIZ, *Senior Judge*.

GLICKMAN, *Associate Judge*: Gerald G. Neill, Jr., appeals the Superior Court's dismissal of his petition for review of a decision by the Public Employee Relations Board (the "PERB"). We conclude that the trial court erred in dismissing the petition on account of Neill's failure to name the PERB as a respondent and serve the petition on it before the thirty-day filing deadline. We reverse and remand for the trial court to proceed with its consideration of Neill's petition for review.

## I.

Neill, a former Metropolitan Police Officer, served as Chairman of the intervenor police union (the "FOP") from 2000 to 2004. During Neill's tenure, the FOP terminated its contract with its general counsel, Ted Williams. In response, Williams sued both Neill and the new general counsel, alleging breach of contract, tortious interference with contract, and intentional infliction of emotional distress. After a series of procedural disputes of minimal importance here,[1] the Superior Court granted Neill's motion for summary judgment in 2009.

---

[1] *See Fraternal Order of Police Metro. Police Dep't Labor Comm. v. Neill*, No. 01-CV-730 (D.C. Mar. 4, 2008) (unpublished opinion).

On March 15, 2010, Neill filed a "standards of conduct" complaint against the FOP with the PERB. Public sector unions in the District are statutorily required to certify their compliance with certain standards of conduct, including one obligating them to maintain "provisions defining and securing the right of individual members . . . to fair and equal treatment under the governing rules of the organization. . . ."[2] The PERB has jurisdiction to hear complaints alleging that a recognized union failed to comply with the specified conduct standards.[3] Neill's complaint alleged such a violation in the FOP's refusal to pay for his defense of Williams's lawsuit despite a provision in its bylaws guaranteeing legal representation to union members for the defense of civil actions arising out of the performance of their duties.

Standards of conduct complaints must be filed with the PERB within 120 days "from the date the alleged violation(s) occurred."[4] This deadline has been

---

[2] D.C. Code § 1-617.03 (a)(1) (2012 Repl.).

[3] *See Fraternal Order of Police Metro. Police Dep't Labor Comm. v. Pub. Emp. Relations Bd.*, 516 A.2d 501, 504-05 (D.C. 1986); *see also* 6B DCMR § 544 (1999).

[4] 6B DCMR § 544.4.

held to be "jurisdictional and mandatory."[5]  On February 4, 2012, the PERB, reading Neill's pleading to allege that the union denied his request for legal representation in 2008, dismissed his complaint as untimely.[6]  On March 1, 2012, Neill petitioned for review of the PERB's decision in Superior Court.

---

[5] *Moore v. Fraternal Order of Police / Dep't of Youth Rehab. Servs. Labor Comm.*, PERB Case No. 12-S-03, PERB Opinion No. 1290, 2012 WL 3218537, at *2 (D.C. Pub. Emp. Relations Bd. May 30, 2012); *see also Gibson v. District of Columbia Pub. Emp. Relations Bd.*, 785 A.2d 1238, 1241 (D.C. 2001) (stating that the identical 120-day deadline for filing unfair labor practice complaints is "mandatory and jurisdictional") (quoting *Hoggard v. District of Columbia Pub. Emp. Relations Bd.*, 655 A.2d 320, 323 (D.C. 1995)).  Recent authority calls into question whether the PERB's filing deadlines are in fact jurisdictional.  *See Gatewood v. District of Columbia Water & Sewer Auth.*, 82 A.3d 41, 45-49 (D.C. 2013) (holding that an agency filing deadline set forth in a regulation as a "rule of administrative convenience" is not jurisdictional).  However, assuming the FOP properly raised the 120-day deadline, the correctness of the PERB's dismissal may not turn on whether the deadline is jurisdictional.  *See Smith v. United States*, 984 A.2d 196, 199 (D.C. 2009) (Non-jurisdictional but inflexible "[c]laim-processing rules . . . assure relief to a party properly raising them, but do not compel the same result if the party forfeits them.") (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005)).  Regardless, we leave it to the Superior Court on remand to decide any questions relating to the 120-day deadline.

[6] *Neill v. Fraternal Order of Police / Metro. Police Dep't Labor Comm.*, PERB Case No. 10-S-04, PERB Opinion No. 1240, 59 D.C. Reg. 7222 (D.C. Pub. Emp. Relations Bd. Feb. 4, 2012), *available at* http://www.dcregs.dc.gov/Gateway/NoticeHome.aspx?NoticeID=2541320.

Petitions for review of PERB decisions in Superior Court must be filed within thirty days of their issuance.[7] Neill filed his petition before the expiration of this deadline. However, his petition did not name the PERB as the respondent (though it identified the PERB decision Neill sought to have reviewed), and he did not serve the petition on the PERB. Instead, Neill named the FOP as the respondent, and he served the FOP and the Attorney General for the District of Columbia.

On June 21, 2012, well after the thirty-day window for filing a petition had closed, Neill's attorney contacted the PERB to ask why it had not filed the agency record with the Superior Court, as it normally would do.[8] The PERB's general

---

[7] *See* D.C. Code § 1-617.13 (c) ("Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain review of such order in the Superior Court of the District of Columbia by filing a request within 30 days after the final order has been issued."); Super. Ct. Agency Rev. R. 1 (a) ("[A]n appeal to the Superior Court of the District of Columbia permitted by the [Comprehensive Merit Personnel Act] shall be obtained by filing a petition for review . . . within 30 days after service . . . of the final decision to be reviewed or within 30 days after the decision to be reviewed becomes a final decision under the applicable statute or agency rules, whichever is later.").

[8] *See* Super. Ct. Agency Rev. R. 1 (e) ("Within sixty (60) days from the date of service of petition upon the agency and the office of the Corporation Counsel, the agency shall certify and file with the Clerk the entire agency record, including all of the original papers comprising that record, and shall notify the petitioner of the date on which the record is filed.").

counsel informed Neill's attorney that the PERB, as an independent agency, was not represented by the D.C. Attorney General in appeals of PERB decisions. Because Neill had not served the PERB with his petition, its general counsel explained, it was not a party to the appeal and so had no obligation to file the record. Moreover, the PERB's counsel asserted, Neill's failure to serve the PERB within the thirty-day filing period meant that its decision had become final. That same day, Neill served the PERB with his petition. He later filed an amended petition for review naming the PERB as the respondent, after being prompted to do so at a June 29 initial scheduling hearing in Superior Court.

Based on Neill's failure to name the PERB as the respondent in his initial petition for review and failure to serve that petition on the PERB before the expiration of the thirty-day filing deadline, the PERB moved to dismiss for lack of subject matter jurisdiction. The Superior Court granted the motion, dismissed Neill's petition with prejudice, and denied his motion for reconsideration. Neill noticed this timely appeal.

## II.

We agree that Neill was required by the Superior Court's Rules to name the PERB as the respondent in his petition for review, and to serve his petition on the

PERB within the thirty-day filing deadline. We conclude, however, that Neill's non-compliance with those requirements did not deprive the Superior Court of jurisdiction over his petition or otherwise justify its dismissal. Accordingly, we reverse; on remand the court will have discretion to decide whether to impose lesser sanctions for Neill's missteps.

**A.**

The Comprehensive Merit Personnel Act ("CMPA")[9] provides for appeals from decisions of the PERB (the body charged with adjudicating public sector labor disputes and other public employee matters) and the Office of Employee Appeals (the entity primarily responsible for reviewing certain serious adverse employment actions) to be taken to the Superior Court.[10] To implement that requirement and govern such appeals, the Superior Court adopted Agency Review Rule 1.[11] Among other things, Rule 1 specifies the time and manner for filing petitions for review in CMPA cases, and to furnish additional guidance, is

---

[9] D.C. Code § 1-601.01, *et seq*. (2012 Repl. & Supp. 2013).

[10] D.C. Code §§ 1-606.03 (d) (OEA), 1-617.13 (b) & (c) (PERB).

[11] The Rule is located in Section XV of the Superior Court's Rules of Civil Procedure.

accompanied by a form petition for review for litigants to use as a model. The PERB contends, and the Superior Court agreed, that Neill's initial petition did not satisfy the requirements of Rule 1 with respect to naming the agency as respondent and serving it with the petition, and that those requirements are jurisdictional. Neill disputes their interpretation of Rule 1 and their jurisdictional claims.

The interpretation of a rule of procedure is a question of law as to which our review is *de novo*.[12] We do not agree that the Superior Court misunderstood Rule 1's requirements. To begin with, although the text of Rule 1 and the accompanying form petition do not say so explicitly, we heretofore have held that the Rule requires a petitioner to name the PERB (or the Office of Employee Appeals, as the case may be) as the respondent in the caption of his petition for review.[13] A petition that fails to name the PERB in the caption, and that instead names the opposing party in the agency proceeding as the respondent, is noncompliant even if the petition elsewhere correctly identifies the PERB as the

---

[12] *See Gibson v. Freeman*, 941 A.2d 1032, 1034-35 (D.C. 2008).

[13] *District of Columbia Dep't of Admin. Servs. v. Int'l Bhd. of Police Officers, Local 445*, 680 A.2d 434, 437 (D.C. 1996) [hereinafter *IBPO*].

agency that issued the order from which relief is sought (as Neill's petition did in this case).[14]

Disputing this interpretation of Rule 1, Neill argues that he properly named the FOP as the respondent because the PERB lacks constitutional standing to defend its decision.[15] That is incorrect. We have explained that an agency presumptively "must carry the burden of defending its action in any challenge to it" because the "matters raised in" such a challenge "go directly to the [agency's] authority and to the validity of its decision, which the [agency] has a substantial interest in defending."[16] Neill's argument that this presumption does not apply to the PERB is contradicted by our decision in *IBPO*, which noted that the PERB was "the only entity that could afford the relief sought."[17]

---

[14] *See id.* at 438.

[15] *See generally Grayson v. AT&T Corp.*, 15 A.3d 219, 232-36 (D.C. 2011) (en banc) (explaining that this court, at least in the absence of contrary legislative instruction, adheres to the standing requirements of Article III as articulated by the Supreme Court).

[16] *Francis v. Recycling Solutions, Inc.*, 695 A.2d 63, 70-71 (D.C. 1997).

[17] 680 A.2d at 437 (citation omitted); *cf. Brown v. District of Columbia Pub. Emp. Relations Bd.*, 19 A.3d 351, 355-58 (D.C. 2011) (describing and accepting the PERB's argument in defense of its decisions without questioning the agency's standing); *District of Columbia Pub. Emp. Relations Bd. v. Fraternal Order of*

(continued…)

In asserting that the PERB nonetheless lacks standing, Neill relies on cases from other jurisdictions holding that particular agencies were without *statutory* authorization to litigate in court.[18] But the CMPA expressly empowers the PERB to litigate the validity of its decisions.[19] Neill rejoins that the PERB's interest in defending its decisions on the merits does not create an interest (sufficient for standing) in enforcing its "procedural right,"[20] i.e., the statutory time limit for seeking review. That contention too is incorrect, for the time bar plays an obvious

---

*(continued…)*
*Police*, 987 A.2d 1205 (D.C. 2010) (deciding a case in which the PERB appealed from an adverse Superior Court decision).

[18] *See, e.g.*, *Kaiser Aluminum & Chem. Corp. v. Dep't of Labor & Indus.*, 854 P.2d 611, 614-16 (Wash. 1993) (en banc).

[19] *See* D.C. Code § 1-605.02 (16) ("The Board shall have the power to . . . [s]eek appropriate judicial process to enforce its orders and otherwise carry out its authority under this chapter."); *id.* § 1-605.02 (14) ("The Board shall have the power to . . . [r]etain . . . independent legal counsel. . . ."); *id.* § 1-617.13 (b) ("The Board may request the [Superior Court] to enforce any order issued [by it.]"); *id.* § 1-617.13 (c) ("The [Superior Court] shall have the same jurisdiction to review the Board's order and to grant to the Board such order of enforcement [upon petition by an aggrieved party] as in the case of a request by the Board under subsection (b). . . .").

[20] Reply Brief at 4 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009)).

role in ensuring the enforceability of the PERB's decisions.[21]  We reject Neill's standing argument and hold that his initial petition for review contravened Agency Review Rule 1 by failing to name the PERB as the respondent.[22]

Whether Rule 1 also required Neill to serve the PERB is a question this court previously has not had occasion to resolve.  On its face, the Rule can be read to suggest otherwise, because subsection (a) provides only that a petition for review must "show service . . . upon all other parties to the agency proceeding and

---

[21]  *See Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 94-95 (D.C. Cir. 2002) (A litigant "who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure the substantive result would have been altered.  All that is necessary is to show that the procedural step was connected to the substantive result."); *cf. Summers*, 555 U.S. at 496 ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing.").

[22]  Neill makes an additional constitutional argument that the PERB, in moving to dismiss his petition as untimely, was not acting as the "impartial and disinterested tribunal" that due process required.  *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).  We reject this argument as well, because the PERB's defense of its decision on procedural grounds is no evidence that its decision was biased in any way.  *Cf. Withrow v. Larkin*, 421 U.S. 35, 47-55 (1975) (The combination of investigative and adjudicatory functions within an agency, without a specific showing of bias, does not violate due process.).

the Office of the Corporation Counsel of the District of Columbia."[23]  No lawyer

would think of the PERB as a party to its own proceeding, and the requirement of

service on the Attorney General[24] might be taken to imply that service on the

PERB is unnecessary.  Neill argues that service on the Attorney General was

indeed sufficient to serve the PERB.

Nevertheless, the better reading of Rule 1 is that it does require petitions for

review to show service on the agency that conducted the proceeding below.

Subsection (e) of the Rule states that the adjudicating agency must file the record

with the Superior Court "[w]ithin sixty (60) days from the date of service of

petition upon the agency and the office of the Corporation Counsel,"[25] and the

comment to the Rule explicitly states that the "petition must be served on the

---

[23]  Super. Ct. Agency Rev. R. 1 (a).  The requirement that a petition "show service" means that service must be made on or before the date of filing.  *See* Super. Ct. Civ. R. 5-I (providing that proof of service "shall show the date and manner of service on the parties"); *id.* R. 5 (b)(2) (providing that service may be made by hand delivery, mail, or, if consented to, any other means, including electronically).  Agency Review Rule 1 (h) expressly incorporates Civil Rules 5 and 5-I.

[24]  The Office of the Corporation Counsel was renamed the Office of the Attorney General in 2004.  *See* Mayor's Order No. 2004-92, 51 D.C. Reg. 6052 (May 26, 2004).

[25]  Super. Ct. Agency Rev. R. 1 (e).

agency involved with a copy to the attorney in the office of the Corporation Counsel handling the case."[26]  Reading the Rule in its entirety together with its explanatory comment[27] thus makes clear that the agency must be served as well as the Attorney General, and the Rule makes only one party—the petitioner—responsible for service.[28]  There is no solid textual basis for reading the Rule to require a different party—for example, the Attorney General or the Clerk of the Superior Court—to serve the agency.[29]  And it would be anomalous to place the burden of serving the PERB on the Attorney General, as Neill proposes, given that the PERB is an independent agency with its own general counsel, and that the Attorney General often represents one side (the District government) in disputes

---

[26]  *Id.* cmt.

[27]  *See In re Sealed Case*, 141 F.3d 337, 342 (D.C. Cir. 1998) ("We can assume that if a [rule of procedure] were ambiguous, one might look to a clear Advisory Note to resolve that ambiguity. . . .").

[28]  *Cf. Thompson v. District of Columbia*, 863 A.2d 814, 816-18 (D.C. 2004) (affirming the dismissal of a suit against the District because the plaintiff served the Corporation Counsel, but not the Mayor; rejecting the plaintiff's argument that she "substantially complied" with the rule by serving an agent of the Mayor; and explaining that the "plain language of the [applicable] rule" requires "that service of process shall be effected on both the Corporation Counsel *and* the Mayor").

[29]  *Cf.* D.C. App. R. 15 (c) (providing that in agency cases petitioned directly to the Court of Appeals, "[t]he Clerk must serve a copy of the petition for review on the respondent agency.").

adjudicated by the PERB—i.e., disputes between the District and its public sector unions.[30]

Having said this, it must be acknowledged that the text of Rule 1 is misleading. We think the Superior Court would do well to amend it to state unambiguously that petitions for review of agency decisions under the CMPA must (1) name the agency that issued the decision being appealed as the respondent in the caption and (2) show service by the petitioner on that agency, all other parties to the agency proceeding, and the Attorney General for the District of Columbia.[31] The form petition accompanying the Rule should reflect these requirements. Additionally, we suggest that the PERB consider adopting the practice of other District agencies of attaching to its decisions instructions detailing how, where, and when an aggrieved party may seek review.

**B.**

---

[30] *See, e.g.*, *District of Columbia Metro. Police Dep't v. District of Columbia Pub. Emp. Relations Bd.*, 901 A.2d 784 (D.C. 2006); *Teamsters Local Union 1714 v. District of Columbia Pub. Emp. Relations Bd.*, 579 A.2d 706 (D.C. 1990).

[31] *See* D.C. Code § 11-946 (2012 Repl.) (granting the Superior Court the power to amend its rules, subject to approval by this court).

We now turn to the question of whether Neill's initial failures to name and serve the PERB deprived the Superior Court of subject matter jurisdiction to review the PERB's decision even though Neill filed his petition within the thirty-day period specified by D.C. Code § 1-617.13 (c) and Rule 1 and otherwise complied with their requirements. The issue of subject matter jurisdiction is a question of law as to which our review is *de novo*.[32]

We read this court's decision in *IBPO* to hold that Neill's failure to name the PERB as respondent did not divest the Superior Court of jurisdiction. In that case, after concluding that the petitioner violated Rule 1 by not naming the PERB as respondent, the court explained that "this is not the kind of rules violation that calls for *per se* dismissal."[33] The court contrasted the captioning failure with "mandatory and jurisdictional" filing requirements, such as time limits for filing.[34]

---

[32] *See Heard v. Johnson*, 810 A.2d 871, 877 (D.C. 2002); *see also Drivers, Chauffeurs & Helpers Local Union No. 639 v. District of Columbia*, 631 A.2d 1205, 1213 (D.C. 1993) (reviewing dismissal of a petition for review of a PERB decision as untimely without specifying the standard of review, implying that the court applied a *de novo* standard).

[33] *IBPO*, 680 A.2d at 437.

[34] *Id.* at 437 n.3. This court has said that the thirty-day time limit contained in D.C. Code § 1-617.13 (c) and Rule 1 for filing a petition for review is jurisdictional. *See, e.g.*, *Fisher v. District of Columbia*, 803 A.2d 962, 965 (D.C. 2002) (stating that the Rule 1 time limitation is "mandatory and jurisdictional," in a

*(continued…)*

Had the court thought jurisdiction to be in doubt, it would have said so.[35]

More recent cases lead us to the same conclusion. The Supreme Court and this court have striven to differentiate jurisdictional rules that limit the court's authority to hear a case from non-jurisdictional "claim-processing" rules that "seek to promote the orderly process of litigation by requiring that the parties take certain procedural steps at certain times."[36] Jurisdictional limitations, when not constitutionally mandated, are an exercise of legislative power and so must be grounded in statutes or other legislative acts; absent a proper delegation of that power to the judiciary, procedural requirements imposed only by court rule are not

---

*(continued…)*
case where no statutory deadline applied); *Drivers, Chauffeurs & Helpers Local Union No. 639*, 631 A.2d at 1213 (stating that "the threshold issue of timeliness" under both the CMPA and Rule 1 for filing a petition for review of a PERB decision "goes to the trial court's subject matter jurisdiction"). For purposes of this appeal, we need not decide whether our decisions labeling the time limit jurisdictional remain good law in light of subsequent Supreme Court cases (including those cited in the next paragraph) distinguishing jurisdictional rules from claim-processing rules.

[35] *See, e.g.*, *In re D.M.*, 771 A.2d 360, 364 (D.C. 2001) ("Where a substantial question exists as to this court's subject matter jurisdiction, it is our obligation to raise it, *sua sponte*, even though, as here, no party has asked us to consider it.") (citation and alterations omitted).

[36] *Henderson v. Shinseki*, 131 S. Ct. 1197, 1203 (2011).

jurisdictional in nature—they are claim-processing rules that (unlike the requirements of subject-matter jurisdiction) may be relaxed or waived.[37]

Indeed, the Superior Court Rules of Civil Procedure state explicitly that they "shall not be construed to extend or limit the jurisdiction of this Court."[38] It is true, as we have indicated, that a jurisdictional provision in a statute may (explicitly or implicitly) delegate or leave to the court the responsibility to specify or define the precise jurisdictional condition in a rule, thereby rendering the rule jurisdictional to that extent. For example, the District of Columbia Administrative Procedure Act provides that petitions for review in this court "shall be filed . . . within such time as [this court] may by rule prescribe. . . ."[39] We have held that our implementing

---

[37] *See Gatewood v. District of Columbia Water & Sewer Auth.*, 82 A.3d 41, 48 (D.C. 2013) (explaining that claims-processing rules are "typically promulgated by a decision-making body" and jurisdictional rules are "most often legislative enactments"); *id.* at 46 ("Jurisdictional rules may be raised at any point in the proceedings and are not subject to waiver, however late they are invoked. By contrast, nonjurisdictional rules and deadlines may be extended or waived."); *see also Bowles v. Russell*, 551 U.S. 205, 211-13 (2007); *Smith v. United States*, 984 A.2d 196, 200-01 (D.C. 2009). It should be noted that even statutory restrictions governing the cases courts may hear are not to be deemed jurisdictional unless the intent of the legislature is clear. *See Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824 (2013).

[38] Super. Ct. Civ. R. 82.

[39] D.C. Code § 2-510 (a) (2012 Repl.).

rule, which provides a thirty day period for a party to seek review, is jurisdictional.[40] Similarly, D.C. Code § 11-721 (2012 Repl.) provides that this court has jurisdiction to hear appeals by aggrieved parties from orders or judgments of the Superior Court. How, then, does an aggrieved party "appeal"? The statute does not spell that out, but our implementing rule specifies it is done by filing a notice of appeal that identifies the appellant(s) and the judgment or order being appealed.[41] We have held these definitional requirements to be jurisdictional.[42] The Supreme Court likewise has held that "both a notice [of appeal] and its contents are jurisdictional prerequisites."[43] But this certainly does not mean that the caption or form of an otherwise compliant notice has

---

[40] *See* D.C. App. R. 15 (a)(2); *Capitol Hill Restoration Soc. v. Mayor's Agent for Historic Preservation*, 44 A.3d 271, 277 (D.C. 2012).

[41] *See* D.C. App. R. 3 (a), (c).

[42] *See Patterson v. District of Columbia*, 995 A.2d 167, 170 (D.C. 2010) (holding that identification of appellant in notice of appeal is a jurisdictional requirement, and that the failure to name a party in a notice to appeal "constitutes a failure of that party to appeal") (quoting *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988)); *Vines v. Mfrs. & Traders Trust Co.*, 935 A.2d 1078, 1083 (D.C. 2007) (holding that failure to designate the judgment or order being appealed is a jurisdictional defect).

[43] *Gonzalez v. Thaler*, 132 S. Ct. 641, 651 (2012); *see also Smith v. Barry*, 502 U.S. 244, 248 (1992) ("Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review.").

jurisdictional significance.[44]  Nor do the foregoing cases mean that the various other procedural requirements imposed by rule for perfecting a petition for review of agency action or an appeal from the Superior Court are jurisdictional.[45]

The relevant statute in this case, D.C. Code § 1-617.13 (c), does not specify that petitions for review of PERB decisions must name the deciding agency as respondent in the caption of the petition; it simply states that "[a]ny person aggrieved by a final order of the Board . . . may obtain review of such order by filing a request within 30 days after the final order has been issued."  There is no doubt that Neill filed such a request, or that in it he identified himself, the PERB, and the final order he sought to have reviewed.  The formal pleading requirement with which Neill failed to comply, that the PERB be identified as the respondent,

---

[44]  *See* D.C. App. R. 3 (c)(4) ("An appeal may not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice.").

[45]  *See* D.C. App. R. 3 (a)(2) ("An appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the Court of Appeals to act as it considers appropriate, including dismissal of the appeal.");  *see also, e.g.*, *Moore Energy Res., Inc. v. Pub. Serv. Comm'n*, 785 A.2d 300, 304-06 (D.C. 2001) (holding that the requirement in Rule 15 (a) that counsel for a corporation sign a petition for review is not jurisdictional);  *Montgomery v. Docter, Docter & Salus, P.C.*, 578 A.2d 176, 177-78 (D.C. 1990) (payment of a filing fee and filing of copies of the notice of appeal, as required by the appellate rules, held "not a jurisdictional prerequisite," albeit the latter filing requirement is "essential to the processing of an appeal").

derives only from Rule 1. It may be an important claim-processing requirement, but it is not part of the essential definition of a "request" for review. No statute delegates to the Superior Court the authority to impose such a technical pleading requirement as a jurisdictional prerequisite to the review of PERB decisions. We therefore are comfortable reaffirming the implicit holding of *IBPO* that, while a petitioner's failure to name the agency as respondent in a Rule 1 petition for review may have other consequences, it does not divest the Superior Court of jurisdiction.

Turning to Neill's failure to effect timely service on the PERB, the CMPA does not impose any particular service requirement as a condition of invoking the jurisdiction of the Superior Court. As we have emphasized, D.C. Code § 1-617.13 (c) provides that "filing" a timely request is all a person aggrieved by a final order of the PERB need do to obtain judicial review. "Filing" is a term of limited meaning; it does not encompass the concept of service.[46] Service of process goes

---

[46] *See, e.g.*, *Milton v. United States*, 105 F.2d 253, 255 (5th Cir. 1939) ("The word 'filed' . . . is, as applied to court proceedings, a word of art, having a long established and well understood meaning, deriving from the practice of filing papers on a string or wire. It requires of one filing a suit, merely the depositing of the instrument with the custodian for the purpose of being filed. . . . [I]t charges him with no further duty[.]"); BLACK'S LAW DICTIONARY 660 (8th ed. 1999) (defining "file" as "To deliver a legal document to the court clerk or record custodian for placement into the official record"). The distinction between filing

*(continued…)*

to the court's power over the party to be served, not the court's ability to consider the subject matter of the case, i.e., its subject-matter jurisdiction.[47] Our cases reflect that distinction. For example, in the analogous context of petitions for review filed in this court, we have rejected the argument that a petitioner's failure to timely serve intervenors affects the court's subject matter jurisdiction.[48] And

---

*(continued…)*
and service is well-established in our jurisprudence. *See, e.g.*, *Varela v. Hi-Lo Powered Stirrups*, 424 A.2d 61, 67-68 (D.C. 1980) (en banc) (recognizing the "clear understanding that the manner by which an action is *commenced* [via filing of the complaint with the court] . . . presents a completely different and separable array of considerations from the manner by which *service of process* is to be made") (emphasis in the original).

[47] *See Henderson v. United States*, 517 U.S. 654, 656 (1996) ("We hold that, in actions arising under federal law, commenced in compliance with the governing statute of limitations, the manner and timing of serving process are generally nonjurisdictional matters of 'procedure' controlled by the Federal Rules."); 4 CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FED. PRACTICE AND PROCEDURE § 1063 (3d ed. 2002) (distinguishing the concepts of subject matter jurisdiction, venue, personal jurisdiction, and service of process); *see also* Super Ct. Civ. R. 12 (b) (providing for lack of subject matter jurisdiction and defective service as separate defenses); *McKnight v. Scott*, 665 A.2d 973, 975-76 (D.C. 1995) (considering separately questions of subject matter jurisdiction and improper service, and noting that "[t]he purpose of service of process is to ensure that all parties have notice of a legal proceeding").

[48] *Myrick v. District of Columbia Bd. of Zoning Adjustment*, 577 A.2d 757, 762 n.11 (D.C. 1990).

insufficiency of service may be waived,[49] while subject matter jurisdiction may not.[50] We readily conclude that the service requirements of Agency Review Rule 1 are not jurisdictional in character, and that Neill's failure to serve the PERB within the thirty-day filing period therefore did not divest the Superior Court of subject matter jurisdiction over his petition.

## C.

Finally, we consider whether Neill's non-compliance with Rule 1, although it did not deprive the court of subject matter jurisdiction, nevertheless justified dismissal (with or without prejudice).[51] Superior Court Civil Procedure Rule 41 (b) gives the trial court authority to dismiss any claim or action for failure of the

---

[49] *McLaughlin v. Fidelity Sec. Life Ins.*, 667 A.2d 105, 107 n.5 (D.C. 1995); *see also* Super. Ct. Civ. R. 12 (h)(1) ("A defense of . . . insufficiency of process, or insufficiency of service of process is waived" unless included in either a responsive pleading or a motion to dismiss.).

[50] *Upson v. Wallace*, 3 A.3d 1148, 1155 (D.C. 2010) ("As a general rule, subject matter jurisdiction may not be waived. . . ."); *see also* Super. Ct. Civ. R. 12 (h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

[51] Because the thirty-day time period for filing his petition for review had run by the time the court dismissed Neill's petition, it makes no difference to him whether the dismissal was with or without prejudice—either way, the dismissal was final.

plaintiff to comply with procedural rules, including, in principle, captioning and service irregularities.[52] However, because Neill's errors were not willful, the record does not show prejudice to the other parties, and the trial court did not consider alternative sanctions, we conclude that dismissal of the petition was unwarranted.

Some claim-processing rules, although not jurisdictional, are considered "inflexible," meaning they are strictly enforced when the opposing party properly invokes them.[53] *IBPO* made clear that the captioning rule is not in that category.[54] As to the service requirement of Rule 1, analogous provisions in the Civil Rules allow for a case to proceed despite improper or untimely service if the court finds good cause why the case should not be dismissed—i.e., that the violation should be excused.[55] We conclude similarly that imperfect service under Rule 1 does not require automatic dismissal.

---

[52] Super. Ct. Civ. R. 41(b); *see also Techniarts Video, Inc. v. 1631 Kalorama Assocs.*, 572 A.2d 1051, 1053 n.10 (D.C. 1990); *Wagshal v. Rigler*, 711 A.2d 112, 116 (D.C. 1998); *IBPO*, 680 A.2d at 436 n.2.

[53] *See In re Na. H.*, 65 A.3d 111, 115-17 (D.C. 2013).

[54] 680 A.2d at 436-37 & n.2.

[55] *See* Super. Ct. Civ. R. 4 (m), 41 (b); *Baba v. Goldstein*, 996 A.2d 799, 802-04 (D.C. 2010); *Wagshal*, 711 A.2d at 114-16.

Because neither the captioning nor the service requirement is "inflexible," the trial court, in exercising its Rule 41 (b) authority, has discretion to determine the penalty for noncompliance with them.[56] Because of its severity, however, dismissal may be imposed as a sanction for the failure to comply with procedural requirements or other misconduct only in "extreme circumstances and only after the trial court has considered lesser sanctions."[57] The court must consider "whether the conduct calling for sanctions was willful and whether the other party was prejudiced by it, and the sanction imposed should, wherever possible, be

---

[56] *See IBPO*, 680 A.2d at 436-37 & n.2; *Wolfe v. Fine*, 618 A.2d 169, 172-73 (D.C. 1992); *White v. Wash. Metro. Area Transit Auth.*, 432 A.2d 726, 728 (D.C. 1981). We recognize that when a decision is committed to trial court discretion, an appellate court cannot substitute its own discretionary judgment for that of the trial court. *See Johnson v. United States,* 398 A.2d 354, 362 (D.C. 1979). However, where we conclude that "the facts . . . leave the trial court with but one option it may choose without abusing its discretion," *id.* at 364, we need not remand for the trial court to exercise that discretion as, in essence, a mere formality. *See Wright v. United States,* 508 A.2d 915, 920 (D.C. 1986); *Ibn–Tamas v. United States,* 407 A.2d 626, 635 (D.C. 1979). We deem this principle applicable here.

[57] *Techniarts Video*, 572 A.2d at 1054; *see also, e.g.*, *Solomon v. Fairfax Vill. Condo. IV Unit Owner's Ass'n*, 621 A.2d 378, 379 (D.C. 1993) (per curiam) ("Of all the weapons in the judicial arsenal available to a trial court to discourage dilatory behavior during litigation, perhaps none is so lethal as a dismissal with prejudice."); *LaPrade v. Lehman,* 490 A.2d 1151, 1155 (D.C. 1985) ("In the exercise of its discretion under Rule 41(b), the trial court 'should first resort to the wide range of lesser sanctions which it may impose.'") (quoting *Garces v. Bradley*, 299 A.2d 142, 144 (D.C. 1973)).

tailored to the offense."[58]  "[A]t least as a general proposition, dismissal with prejudice is an appropriate sanction only upon clear evidence of deliberate delay or upon a showing of contumacious conduct by the plaintiff."[59]

Judged by those standards, it cannot be maintained that Neill's initial failure to properly caption and serve his petition for review was sufficient justification for dismissing his petition.  Neill's errors plainly appear to have resulted from inadvertence or negligence at worst, not "contumacious conduct."[60]  Once Neill's attorney learned that he was required to serve the PERB, he did so promptly. Similarly, when advised to do so by the trial court, Neill without delay submitted an amended petition with a proper caption.  And although Neill's errors caused a somewhat lengthy delay, the PERB and the union suffered no evident prejudice as a result.[61]

---

[58] *Techniarts Video*, 572 A.2d at 1054 (citations omitted).

[59] *Wolfe*, 618 A.2d at 173 (alteration and internal quotation marks omitted); *see also Granville v. Hunt*, 566 A.2d 65, 66 (D.C. 1989).

[60] *Wolfe*, 618 A.2d at 173.

[61] *See id.* ("When the conduct calling for sanctions consists of delay, . . . relevant factors include the length of the delay and the resulting prejudice, if any, to the defendant.").

Our conclusion that dismissal was too severe a sanction is confirmed by our cases. In *IBPO*, we held that failing to name the PERB as respondent did not require dismissal because the body of the petition correctly identified the PERB as the agency that issued the order from which relief was sought.[62] The same is true here. In addition, the PERB "received actual notice of the suit, was properly served, filed responsive pleadings, and obtained the consent of all parties to intervene in the proceeding," and thus "acted, for all practical purposes, as the respondent it truly [was]."[63] Ultimately, that was true here as well.

The only meaningful difference between this case and *IBPO* is the timing of service on the agency. It is undeniable that Neill's failure resulted in a significant delay. The PERB should have been served on March 1; it was not served until June 29. The agency record should have been filed by April 30; it was not filed until October 2. Nonetheless, according to the docket, nothing of significance occurred during that time other than the scheduling and re-scheduling of an initial conference. There is no indication, on this record at least, that the delay compromised the defense of the PERB's decision or caused the FOP to incur costs

---

[62] 680 A.2d at 438.

[63] *Id.*

by litigating in place of the agency. And unaccompanied by willful misconduct or prejudice, the delay of a few months was not so prolonged that it could be said to justify the sanction of dismissal by itself.[64]

This court's decision in *Francis v. Recycling Solutions, Inc.*,[65] on which the PERB relies, provides an apt contrast. In that case, we upheld the trial court's dismissal of a lawsuit challenging the award of a recycling contract where the plaintiff (the losing bidder) incorrectly named as the defendant the winning bidder rather than the agency that made the award. The plaintiff had not served the agency and had fought against its entry in the litigation as a party, imposing court costs and attorney's fees on the winning bidder forced to litigate the case in the agency's stead.[66] And in addition to naming the wrong defendant, the plaintiff, the director of a District of Columbia governmental agency, was herself an improper

---

[64] *See Lofton v. Kator & Scott*, 802 A.2d 955, 957-58 (D.C. 2002) (holding that the trial court abused its discretion in dismissing a case after the parties allowed it to lay "dormant for at least fourteen-and-a-half-months"); *Dobbs v. Providence Hosp.*, 736 A.2d 216, 220 (D.C. 1999) ("[A]n isolated instance of delaying conduct may not typically support dismissal. . . .").

[65] 695 A.2d 63 (D.C. 1997).

[66] *Id.* at 78-79.

party, for she lacked the statutory authority to sue.[67] None of those factors is present here.[68]

Neill's mistakes were not willful and did not cause the kind of harm that justifies dismissal. Indeed, on this record, it does not appear that the PERB or the union suffered any prejudice at all. We recognize, however, that the trial court has never squarely considered the issue of prejudice. On remand, therefore, it remains open for the court to do so and, if it deems it appropriate, to fashion a remedy "tailored to the offense," for example an award of costs.[69]

---

[67] *Id.*

[68] It is true that Neill has persisted in arguing that the PERB is not a proper party to the case. But he raised his meritless Article III standing argument only after he complied with the service requirement and amended his petition to name the PERB as the respondent, and then only after the Superior Court dismissed his amended petition anyway. In *Francis*, the agency was never served. 695 A.2d at 78.

[69] *Techniarts Video, Inc. v. 1631 Kalorama Assocs.*, 572 A.2d 1051, 1054 (D.C. 1990); *see also LaPrade v. Lehman*, 490 A.2d 1151, 1155-56 (D.C. 1985) ("Alternative sanctions include . . . an assessment of the defendant's costs and reasonable fees against the plaintiff . . . or a finding that [the] plaintiff's lawyer is in contempt of court and the imposition of a fine.").

**III.**

For the foregoing reasons, we reverse the Superior Court's dismissal of Neill's petition for review and remand for further proceedings consistent with this opinion.

*So ordered.*